NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    )
KEITH J. MITAN,                     )    Hon. Garrett E. Brown, Jr.
                                    )
            Plaintiff,              )    Civ. No. 08-6154
                                    )
        v.                          )    **MEMORANDUM OPINION**
                                    )
A. NEUMANN & ASSOCIATES, LLC, A New )
Jersey Limited Liability Company, ACHIM )
NEUMANN, and JOHN DOES 1 through 10,)
                                    )
            Defendants.             )
_____)

**BROWN, Chief Judge:**

This matter comes before the Court on Defendants' motion for summary judgment (Doc. No. 58) and Plaintiff's cross-motion to strike and for discovery (Doc. No. 64). For the following reasons, the Court will grant Defendants' motion and deny Plaintiff's motion.

*Background*

The instant libel dispute arises from the sending of allegedly defamatory email. In discussing the relevant facts, the Court draws all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The relevant facts are not in dispute.[1] Defendant A. Neumann & Associates, LLC, is a

---

[1] This Court previously dismissed Defendants' motions for summary judgment and sanctions and Plaintiff's cross-motion for discovery on June 21, 2010, for failure to submit a

New Jersey-based business brokerage firm, and Defendant Achim Neumann is its principal officer. On or about December 13, 2007, Neumann received an email from a business broker in Virginia that contained an embedded electronic text titled "MITAN ALERT!!! HAVE YOU SEEN THESE PEOPLE?" (Defs.' 56.1 Statement ¶ 12; Pl.'s 56.1 Resp. ¶ 12; Compl. Ex. A (email chain containing "Mitan Alert").) The Mitan Alert, which included a picture of members of the Mitan family, identified Plaintiff Keith Mitan as part of the Mitan family, and detailed a variety of unsavory and illegal business practices engaged in by the Mitan family. (*See generally* Compl. Ex. A.) According to the email history hierarchy, it appears that the Virginia broker included message warning about the business practices of Ken Mitan, the brother of Plaintiff, with the Mitan Alert in his email to Neumann. (*Id.*) Upon receiving the email, Neumann forwarded the Mitan Alert and accompanying message in an email to attorneys and individuals he had worked with in a recent business transaction, adding the following text to the email chain: "He is our guy, a known convicted federal felon. Tried several deals before with other companies, supposedly tried the out-of-the-country store before . . ." (*Id.*)

Although it appears that other members of the Mitan family have faced criminal charges for their business practices (*see* Pl.'s Resp. Br. Ex. H (Department of Justice Nov. 6, 2009 Press Release)), Plaintiff Keith Mitan claims he had no part in their conduct, and that, therefore, the

---

statement of undisputed material facts pursuant to Local Civil Rule 56.1 ("56.1 Statements"). Both parties filed 56.1 Statements with the renewed motions, but neither party's 56.1 Statement contains references to record evidence. *Cf.* L. Civ. R. 56.1 ("On motions for summary judgment, the movant shall furnish a statement which sets forth material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion."). However, because the parties agree on the relevant facts necessary to decide this dispute, and the allegedly libelous email was submitted with the Complaint, the Court will exercise its discretion to excuse the parties' continued failure to comply with Local Civil Rule 56.1.

Mitan Alert's reference to the unlawful conduct of the Mitan family defamed his reputation. Plaintiff, who is an attorney in Michigan, filed suit *pro se* against Neumann and his brokerage firm on December 15, 2008, alleging that Neumann's republication of the Mitan Alert in the December 13, 2007 email constituted libel *per se*. Defendants now move for summary judgment or, in the alternative, to dismiss for lack of subject matter jurisdiction on the following grounds: (1) Plaintiff has not shown sufficient damages to satisfy the amount-in-controversy requirement of the diversity jurisdiction statute, 28 U.S.C. § 1332; (2) Plaintiff has not shown the special damages required by New Jersey law to present a claim for libel; (3) Defendants' conduct is protected by a qualified privilege; (4) the December 13, 2007 email does not defame Plaintiff, because it cannot reasonably be read to refer to him; and (5) Plaintiff's claim is barred by the Communications Decency Act (CDA), 47 U.S.C. § 230. Plaintiff responds that his pleadings satisfy the diversity statute's amount-in-controversy requirement, that New Jersey law does not require a showing of special damages for a libel *per se* claim, that Defendants frequent and reckless republication of the Mitan Alert precludes application of the qualified privilege doctrine, that the email plainly defames him, and that Defendants waived the CDA affirmative defense by failing to raise it in its pleadings. Towards this end, Plaintiff cross-moves to strike Defendants' CDA argument, and Plaintiff seeks discovery of additional persons who may have received the Mitan Alert from Neumann.

### *Subject Matter Jurisdiction*

Defendants' amount-in-controversy argument prompts this Court to examine the basis of the Court's jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Ruhrgas*

*AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative . . . .") (citation omitted). Plaintiff's Complaint invokes the Court's diversity jurisdiction. The diversity jurisdiction statute provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different States." 28 U.S.C. § 1332(a). Although Defendants' Answer generally denies Plaintiff's allegations concerning Defendants' citizenship, Defendants' brief recognizes that A. Neumann & Associates is a New Jersey-based corporation, and neither party suggests that Defendants' citizenship is not diverse from Plaintiff's citizenship, Plaintiff being a resident of Michigan. The only prerequisite of diversity jurisdiction contested by Defendants is the amount-in-controversy requirement.

Defendants' jurisdictional argument hinges on its merits argument that Plaintiff has not shown the special damages required to state a claim for libel under New Jersey law. (*See* Defs.' Br. at 10.) Yet, Defendants' focus on Plaintiff's proofs in the jurisdictional context is misguided, and in any event, Defendants' contention misstates New Jersey law. "The allegations on the face of the complaint control the amount in controversy unless it appears 'to a legal certainty the claim is really for less than the jurisdictional amount . . . .'" *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938); *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961)). "Indeterminacy of the amount to be recovered is therefore not sufficient to defeat diversity jurisdiction, and so it is immaterial that the [plaintiff] might eventually recover less than [the jurisdictional amount]." *Jumara*, 55 F.3d at 877. Plaintiff's Complaint alleges a claim of libel *per se* that has damaged

4

Plaintiff's reputation in excess of $75,000. (Compl. ¶¶ 4–9, 15–17.) Under New Jersey law, damages are presumed if the defamatory statement is deemed to be libel *per se*. *See, e.g.*, *Mayflower Transit, LLC v. Prince*, 314 F. Supp. 2d 362, 377 (D.N.J. 2004); *MacKay v. CSK Publ'g Co.*, 300 N.J. Super. 599, 616–17 (App. Div. 1997). Although the New Jersey Supreme Court has expressed concerns about the continued viability of the *per se* libel and slander doctrines, it has not abandoned them, *see Ward v. Zelikovsky*, 136 N.J. 516, 541 (1994) (expressing concerns about the slander *per se* doctrine, but "leav[ing] for another time whether . . . [to] eliminate [it]"), and courts in New Jersey have continued to recognize claims arising under these doctrines, *see Mayflower*, 314 F. Supp. 2d at 377, *MacKay*, 300 N.J. Super. at 616–17. The libel *per se* doctrine extends to statements that impute that a person has committed a crime. *MacKay*, 300 N.J. Super. at 616. Presuming Plaintiff's allegations to be true—that Neumann knowingly, or with reckless disregard to truth or falsity of the information, forwarded an email containing false statements alleging that Plaintiff engaged in unlawful business practices—Plaintiff has stated a claim for libel *per se*, and this Court may presume damages as a matter of New Jersey law. *See Mayflower*, 314 F. Supp. 2d at 377; *MacKay*, 300 N.J. Super. at 616–17; N.J. Model Civil Jury Instruction 8.46(c) ("[[P]laintiff] also seeks recovery for those damages which the law presumes to follow naturally and necessarily from the (publication of a libel) . . . and which are recoverable by [plaintiff] without proof of causation and without proof of actual injury. The law recognizes that damage to reputation caused by defamation may not always lend itself to proof by objective evidence. . . . In fact, it has been said the damages which are presumed from the (publication) . . . of defamatory material, while not capable of being accurately measured, are, in many ways, more substantial and real than those which can be

proved and measured accurately by the dollar standard."). Under such circumstances, the Court cannot say to a legal certainty that Plaintiff's damages are really less than the jurisdictional amount. *Cf. Dealer Computer Servs., Inc. v. Fullers' White Mountains Motors, Inc.*, Civ. No. 07-748, 2008 WL 828732, at *3–4 (D. Ariz. Mar. 26, 2008) (rejecting amount-in-controversy challenge to jurisdiction where state law permitted inferred damages to reputation for defamation claims); *Haskins v. Baylis*, 440 F. Supp. 2d 455, 460–61, 464 (D. Md. 2006) (same, noting that it was possible that a jury could award more than $75,000 on plaintiff's *per se* defamation claim).

Having found that Plaintiff's Complaint satisfies the amount-in-controversy requirement, and there appearing to be no dispute that the parties are of diverse citizenship, the Court finds that the exercise of diversity jurisdiction is proper. Accordingly, the Court will deny Defendants' motion to the extent that it seeks to dismiss the case for lack of subject matter jurisdiction.[2]

*Analysis*

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)

---

[2]This Court's diversity jurisdiction conclusion is consistent with that of a court in the Western District of Kentucky, which held in a companion case presenting identical libel *per se* claims that the court had diversity jurisdiction. *Mitan v. Davis*, Civ. No. 3:08-CV-117-S, 2008 WL 5233188, at *1 (W.D. Ky. Dec. 15, 2008). That court did, however, dismiss certain defendants for lack of personal jurisdiction. *Id.*

(noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with regard to that issue. *Id.*

The substantive law identifies which facts are "material." *Anderson*, 477 U.S. at 247–48. Therefore, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in the light most favorable to the non-moving party. *Matsushita*, 475 U.S. at 587; *see also Peters v. Del. River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994). The court may not resolve factual disputes or make credibility determinations at the summary judgment stage. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). However, "if the non-movant's evidence on any essential element of the claims asserted is merely 'colorable' or is 'not significantly probative,' the court should enter summary judgment in favor of the moving party." *Peterson v. AT&T*, No. 99-4982, 2004 WL 190295, at *3 (D.N.J. Jan. 9, 2004) (quoting *Anderson*, 477 U.S. at 249). To present a genuine issue of material fact, the summary judgment opponent "'need not match, item for item, each piece of evidence proffered by the movant,' but simply must exceed the 'mere scintilla' standard." *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.*, 998 F.2d 1224, 1230 (3d Cir. 1993); *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant].").

Defendants raise a number of arguments they claim support dismissal of Plaintiff's claim

on the merits, but their Communications Decency Act defense is unique, because it sounds in preemption.  This is because the CDA expressly states that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."  47 U.S.C. § 230(e)(3).  Plaintiff correctly notes that Defendants did not raise this defense in their pleadings, and argues that this omission effectively precludes Defendants from relying on it.  See, e.g., Systems, Inc. v. Bridge Elec. Co., 335 F.2d 465, 466 (3d Cir. 1964) ("An affirmative defense which is neither pleaded as required by Rule 8(c) nor made the subject of an appropriate motion under Rule 12(b) is waived.").  "Courts in this Circuit, however, have taken a more forgiving approach to parties who fail to raise affirmative defenses in an answer, as courts have held that the failure to raise an affirmative defense by responsive pleading or appropriate motion does not always result in waiver."  Sultan v. Lincoln Nat'l Corp., Civ. No. 03-5190, 2006 WL 1806463, at *13 (D.N.J. June 30, 2006) (citing Prinz v. Great Bay Casino Corp., 705 F.2d 692 (3d Cir.1983)).  Federal Rule of Civil Procedure 15 imposes instructs courts to "freely give leave [to amend the pleadings] when justice so requires," Fed. R. Civ. P. 15(a)(2), and the Third Circuit has recognized that a "defendant does not waive an affirmative defense if '[h]e raised the issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond.'"  Charpentier v. Godsil, 937 F.2d 859, 864 (3d Cir. 1991) (citations omitted).  In particular, courts have demonstrated a willingness to consider preemption and immunity defenses that present purely legal questions, where they are raised prior to trial and the opposing party has a reasonable opportunity to respond to the defense.  See, e.g., Ultra-Precision Mfg., Ltd., 411 F.3d 1369, 1376–77 (Fed. Cir. 2005) (allowing federal patent law preemption affirmative defense that was invoked for the first time in defendant's motions in limine, after the district court had

raised the issue *sua sponte* in denying defendant's motion for summary judgment); *Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir. 1997) (allowing collateral estoppel affirmative defense raised for the first time in defendant's second summary judgment motion because the failure to raise the affirmative defense did not result in surprise or prejudice, and the plaintiff had the opportunity to fully respond to the issue); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1373–74 (3d Cir. 1993) (considering immunity defense under Pennsylvania's Good Samaritan law that defendant raised for the first time in its summary judgment motion); *Charpentier*, 937 F.2d at 864 (permitting a New Jersey Tort Claims Act-based immunity affirmative defense raised for the first time by a particular defendant when he joined a co-defendant's trial brief); *Sultan*, 2006 WL 1806463, at *13 (permitting defendants' ERISA preemption affirmative defense that was raised for the first time in defendants' summary judgment motion).

Here, Defendants raised the CDA affirmative defense for the first time in their renewed motion for summary judgment. However, this is not the first time in a legal proceeding that defendants alleged to have defamed Plaintiff via dissemination of the Mitan Alert have raised this defense. In a companion case before the Western District of Kentucky, which involved similar libel *per se* claims by Plaintiff and his family members against a number of defendants, including Neumann, certain co-defendants moved to dismiss the complaint on the basis of the CDA's immunity for persons who republish statements created by other sources through internet activities. *Mitan v. Davis*, Civ. No. 3:08-CV-117-S, Doc. No. 15 at 3–6 (motion to dismiss of April 25, 2008).[3] Although it does not appear that Plaintiff represented himself *pro se* in that

---

[3] As noted above, the court in that case ultimately dismissed these defendants for lack of personal jurisdiction. *Mitan*, 2008 WL 5233188, at *1.

9

matter, the plaintiffs had a full and fair opportunity to respond to that issue in May of 2008, more than six months before Plaintiff filed the instant action against Neumann in New Jersey. *See id.* Doc. No. 23 at 2 (response of May 15, 2008). Furthermore, Plaintiff had a full and fair opportunity to be heard on the CDA defense in this action. (*See* Pl.'s Resp. Br. at 33–34.) Plaintiff suggests that, had Defendants raised the CDA defense at an earlier stage of the litigation, he might have taken additional discovery on the origin of the Mitan Alert text and Neumann's purported subsequent dissemination of the Mitan Alert after the December 13, 2007 email, but Plaintiff fails to explain how this additional discovery would enable his claim to survive the CDA defense or be relevant to his libel claim. Although courts typically extend greater latitude to *pro se* plaintiffs, Plaintiff is an attorney. Under these circumstances, this Court cannot say that permitting Defendants to raise the CDA defense would cause unfair surprise or prejudice. Accordingly, "[e]ven though a motion for summary judgment is not the most appropriate way to raise a previously unpled defense of immunity, [this Court] think[s] it would be inappropriate in the present case to decide the immunity issue on the basis of waiver." *See Kleinknecht*, 989 F.2d at 1374.

The CDA contains an express policy statement proclaiming the United States' desire "to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation." 47 U.S.C. § 230(b)(2). Pursuant to the CDA, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." *Id.* § 230(c)(1). The Act defines "interactive computer service" as "any information service . . . that provides or enables computer access by multiple users to a computer server, including

specifically a service or system that provides access to the Internet," and it defines "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." *Id.* § 230(f)(2), (f)(3).  The Act enforces its mandate in § 230(e)(3), which provides that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."  Read together, these provisions provide immunity from common law defamation claims for persons who republish the work of other persons through internet-based methodologies, such as websites, blogs, and email.  *See, e.g.*, *Barrett v. Rosenthal*, 146 P.3d 510, 513 (Cal. 2006) (holding that CDA immunity extended to individuals who republish via the Internet defamatory statements originally made by others in email and internet postings); *Novins v. Cannon*, Civ. No. 09-5354, 2010 WL 1688695, at *2–3 (D.N.J. Apr. 27, 2010) (same).

Here, it is undisputed that Neumann received the Mitan Alert in December 2007 as a text embedded in an email sent from a Virginia broker. (*See* Defs.' 56.1 Statement ¶ 12; Pl.'s 56.1 Resp. ¶ 12; Compl. Ex. A.)  It is undisputed that Neumann forwarded the email and the broker's attached message, along with his own responsive message, to third parties. (*See* Compl. Ex. A.)  Contrary to the Mitan Alert embedded in the email message (ostensibly copied from another source), nothing in the message of the Virginia broker or in Neumann's responsive message may be fairly read to refer to Plaintiff Keith Mitan. (*See id.*)  Thus, Plaintiff's libel *per se* claim against Neumann rests entirely on Neumann's act of forwarding the text of the Mitan Alert that he received in the December 2007 email.  Under the terms of the CDA, Neumann was a "user of an interactive computer service," and he cannot "be treated as the publisher or speaker of any

information provided by another information content provider." *See* 47 U.S.C. § 230(c)(1).

Neumann appears to argue that CDA immunity would not apply to Neumann's forwarded email because the original source may have been a print newsletter, rather than an interactive computer service. (*See* Pl.'s Br. at 33–34.) However, regardless of the original source of the Mitan Alert, it is undisputed that Neumann received the Mitan Alert via the Internet (email) and republished the same via the Internet (email). Under the CDA, the "information content provider" would be the person "responsible, in whole or in part, for the creation or development of" the Mitan Alert on the Internet. 47 U.S.C. § 230(f)(3). Plaintiff does not suggest that Neumann is the information content provider of the Mitan Alert for purposes of the CDA. Thus, as the downstream Internet user who received an email containing defamatory text and "simply hit the forward icon on [his] computer," *see Phan v. Pham*, 105 Cal. Rptr. 3d 791, 792 (Cal. Ct. App. 2010), Neumann's acts are shielded by the CDA, and Plaintiff's libel claim against Neumann is necessarily preempted under 47 U.S.C. § 230(e)(3).

Plaintiff also argues, based on Neumann's testimony at a collateral arbitration hearing in 2008, that Neumann continued to defame him by "inform[ing] every single broker on the entire East Coast," and thus that the totality of Neumann's conduct exceeds the protections of the CDA. (Pl.'s Br. at 34 & Ex. G at 259–260.) The problem with this argument is two-fold. First, the vague testimony cited by Plaintiff does not establish that Neumann defamed him, as opposed to other members of his family, and even if it did, it does not indicate how the defamatory statements were conveyed.[4]   Furthermore, such purported activities exceed the scope of

---

[4]Notably, Mr. Neumann submitted an affidavit indicating that he did speak to other brokers on the telephone about the "improper conduct" of Plaintiff's brother, Kenneth Mitan. (Neumann Aff. ¶ 10.) This concession does not advance Plaintiff's claim that *he* was defamed.

12

Plaintiff's Complaint, which focuses solely on the defamatory statements made by Plaintiff in a December 13, 2007 email, and the subsequent republication of these statements by unidentified Defendants.  (Compl. ¶¶ 4, 11.)  Plaintiff has not sought to amend his pleadings or identify additional Defendants in this action.  Consequently, Plaintiff's argument based on Neumann's arbitration hearing testimony is unavailing.

In the absence of a viable claim against Neumann, Plaintiff does not state a claim against his brokerage firm.  Fact discovery ended on December 31, 2009, and Plaintiff has not sought to amend his pleadings or identify additional Defendants.  Nothing remains of Plaintiff's Complaint, and the Court will mark the matter closed.[5]

### *Conclusion*

For the aforementioned reasons, the Court will grant Defendants' motion for summary judgment (Doc. No. 58) and deny Plaintiff's cross-motion (Doc. No. 64).  An appropriate form of order accompanies this Memorandum Opinion.

Dated: November 17, 2010

       /s/ Garrett E. Brown, Jr.
    GARRETT E. BROWN, JR., U.S.D.J.

---

[5]Because this Court will grant Defendants' motion for summary judgment on the grounds of the CDA defense, Plaintiff's cross-motion becomes moot.  However, even if Plaintiff had remaining causes action, Plaintiff's request for additional discovery would be denied.  After at least one extension, fact discovery closed on December 31, 2009 (*see* Doc. No. 27 (discovery order)), and Plaintiff's subsequent requests to extend fact discovery were denied by Magistrate Judge Douglas E. Arpert in January and March of this year (*see* Doc. Nos. 34, 35, 53).  Plaintiff did not appeal these orders, and Plaintiff does not now attempt to show cause why he could not have completed the discovery he now seeks within the discovery period.